## Levina Rohn v. Tilghman Odenwelder, Appellant.

*Deed—Annuity—Charge on land—" Under and subject "—Discharge by execution.*

Parties may, by clear and express words in deeds of conveyance, create liens upon land, either for purchase money or for the performance of collateral conditions, which will be binding between themselves and their privies, and such liens will not be divested by subsequent sheriff's sales, where they are in the nature of testamentary provisions for wives and children, or are not capable of valuation, or are expressly created to run with the land.

Where a conveyance is made by a husband and wife to their son " under and subject " to the payment of an annual sum to the husband during his life; and in the same continuous clause it is provided that after his death a less sum " shall be paid " annually to the wife during widowhood; and the right and privilege of the use of three rooms in the house is given to the husband and wife during his life and after his death to her during widowhood, and the payment of the purchase money is provided for, without interest, one year after the death of the husband and the death or remarriage of the wife; and stable-room and food for one horse and carriage-room for one carriage in the barn are also reserved to the husband during his life; in such a case the words " under and subject " apply to the payments to be made to the wife as well as to the husband, and create a fixed lien or charge upon the land, which will not be divested by a subsequent sheriff's sale.

*Demand—Interest—Presumption.*

In such a case, no payments having been made to the wife and no serious demand therefor apparently having been made by her, in a suit for sixteen years' arrearages of her annuity, the question whether or not under the circumstances and the relation of the parties a presumption that no interest on the arrearages was intended, is for the jury. Smyser v. Smyser, 3 W. & S. 437, applied.

*Remedy—Assumpsit—Judgment de terris.*

The remedy of the wife against a subsequent vendee of the land to recover her annuity in such case is an action of assumpsit; but the judgment will be de terris.

Argued March 6, 1894.  Appeal, No. 92, Jan. T., 1894, by defendant, from judgment of C. P. Northampton Co., Oct. T., 1892, No. 36, on verdict for plaintiff.  Before STERRETT, C. J., GREEN, MITCHELL, DEAN and FELL, JJ.  Reversed in part.

Assumpsit for annuity charged on land, the pleadings setting out the facts as below.  Before REEDER, J.

On the trial, the following facts appeared :

On Aug. 7, 1873, Daniel Rohn and Levina, his wife, conveyed the premises in question by deed in fee to Jacob P. Rohn, Jr., their son, " under and subject nevertheless to the payment of the sum of two hundred and fifty dollars yearly and every year unto the said Daniel Rohn during his natural life on the first day of April in each year, the first payment to be made on the first of April, A. D. 1875: and after the death of the said Daniel Rohn, if his wife survives, then the sum of one hundred dollars for each and every year shall be paid to her on the first of April in each and every year, the first payment not to become due until April 1, 1875, in any event: with the right and privilege of the use of three rooms such as the said Daniel Rohn and wife shall choose to occupy, at their option during his natural life ; and if his wife survives she shall have. the same privilege to use the same rooms, so long as she remains a widow and does not marry again ; but in case of her marriage she is to lose her right thereto ; and after the death of the said Daniel Rohn and the death or second marriage of his said wife, the principal sum or purchase money of said farm, to wit, the sum of six thousand two hundred and four dollars and thirty-eight cents shall become due and payable in one year to the five children of the said Daniel Rohn their heirs and legal representatives in equal shares, the said Jacob to have his equal share thereof as one of the said children, the said principal sum or purchase money to be without interest for one year after the death of said Daniel Rohn and the death or second marriage of his said wife ; the said Daniel Rohn also reserving during his lifetime stable room and food for one horse and carriage room for one carriage in the barn."

In November of 1875, the other four children of the grantors released the said Jacob P. Rohn, Jr., from their respective shares of the purchase money.  In 1882, said Jacob P. Rohn, Jr., mort-

gaged the premises to Sylvester Knecht for $2,500, and in 1884 mortgaged them to William H. Claus. The premises were sold under proceedings instituted on the second mortgage and pur-chased by defendant, and a sheriff's deed made to him. Daniel Rohn died before 1876. This action was brought to recover seventeen annual payments of the annuity of $100 with inter-est, the first payment having become due April 1, 1876, and the last payment April 1, 1892.

The court charged in part as follows :

" [The question that is to be determined here is whether this is a charge upon the land or not, the defendant claiming that the first part of the condition in the deed, viz. : the payment of $250 annually to Daniel Rohn, is a condition charged upon the land, but that which follows—the payment of $100 to Mrs. Rohn and the payment of the principal to the children one year after her death—are not a condition charged upon the land, but are merely directory, and that by the acceptance of this deed, with these directions in it, it became a covenant on the part of Jacob P. Rohn by which he became liable in an action. I cannot say that that is the law. This whole provision was a condition charged upon that land, to remain fixed in the nature of a lien but still to be a charge upon the land, and the title of Jacob P. Rohn to the land never would have become perfected in him-self if these conditions had remained inoperative, and in the event of the non-fulfillment of any of these conditions an ac-tion of ejectment could have been brought, and the entire farm recovered by the plaintiffs in such an action.] [8] . . . .

" [Therefore I say to you, gentlemen of the jury, as a mat-ter of law that this was a condition subject to which this land was sold. It is the only apparent inducement for Levina Rohn to sign away her dower interest in this property. It was a charge upon the land, and if it was not paid and the property was sold subject to the first mortgage, it became a fixed charge upon the land for which a purchaser at sheriff's sale became lia-ble, and, as there is no dispute about the facts in the case, there is nothing for you to do but, under the direction of the court, to render a verdict in favor of the plaintiff for the amount of the arrearages on the charge of one hundred dollars annually in her favor in the deed to Jacob P. Rohn.] " [9]

Defendant's points were as follows :

" 1. That by the sale of Jacob P. Rohn's farm by the sher-iff, under the writ of levari facias, on the judgment of Tilghman Odenwelder against Jacob P. Rohn, the annuity or annual payment of one hundred dollars, payable to Levina Rohn under the deed of Daniel Rohn and wife to Jacob P. Rohn, and which was in arrears at the time of the sheriff's sale, was dis-charged by said sale, and the verdict must be for the defendant, Tilghman Odenwelder." Refused. [1]

" 2. The undisputed evidence is that, of the consideration money of $6,204.38, mentioned in said deed of Daniel Rohn· and wife to Jacob P. Rohn, the whole amount thereof, less the share coming to said Jacob P. Rohn, and which under the habendum clause of said deed was payable to the five children of said Daniel Rohn, including the said Jacob P. Rohn, one year· after the death of said Daniel Rohn and wife, without interest,. was paid in 1875 to the said other four children, and that by reason of said payment the subsequent sale of Jacob P. Rohn's· farm by the sheriff, under the aforesaid writ of levari facias,. discharged the annuity or yearly payment of one hundred dol-lars, payable to said Levina Rohn under said deed, in arrears at the time of said sheriff's sale, and the verdict must be for the· defendant, Tilghman Odenwelder." Refused. [2]

" 3. That the provision in said deed of Daniel Rohn and. wife to Jacob P. Rohn, to wit : 'and after the death of said Daniel Rohn, if his wife survives, then the sum of one hun-dred dollars, for each and every year, shall be paid to her on the first of April of each and every year, the first payment not to become due until April 1, 1875, in any event,' does not con-stitute said annuity a lien on the premises conveyed by said deed to said Jacob P. Rohn, and therefore the verdict must be for· the defendant, Tilghman Odenwelder." Refused. [3]

" 4. That under the pleadings in this action of assumpsit, the· plaintiff is not entitled to recover against the defendant, in the absence of any evidence that Tilghman Odenwelder, as sheriff's· vendee of the farm of Jacob P. Rohn, expressly assumed in writing a personal liability to pay the annuity of one hundred dollars to Levina Rohn, the plaintiff, provided for in said deed of Daniel Rohn and wife to said John P. Rohn, and therefore· the verdict must be for the defendant, Tilghman Odenwelder." Refused. [4]

" 5. That the plaintiff is not entitled to recover interest on said annuity from the date that the same was payable annually.'' Refused. [5]

" 6. That the statute of limitation is a complete bar to the right of the plaintiff to recover more than for six years immediately prior to the bringing of her action on the A. D. 1892." Refused. [6]

" 7. Under the law and the evidence the verdict must be for the defendant." Refused. [7]

Verdict and judgment for plaintiff for $2,673.76.

*Errors assigned* were [1–7] instructions, quoting them.

*R. C. Stewart* and *O. H. Myers*, for appellant.—The language of the deed being that the annuity to the plaintiff " shall be paid " to her, constituted a mere direction to pay, and did not create a charge or fixed lien : Hiester v. Green, 48 Pa. 101. Clear and express words are required to create equitable liens : Bear v. Whisler, 7 Watts, 144; Strauss's Ap., 49 Pa. 353; Heist v. Baker, 42 Pa. 11.

The arrearages of the annuity were discharged by the sheriff's sale : Reed v. Reed, 1 W. & S. 235.   In order to preserve the lien of arrearages there must be a principal fund which produces the interest or annuity : Wertz's Ap., 65 Pa. 308; Dewalt's Ap., 20 Pa. 236.   Here the purchase money had all been paid before the first payment of annuity fell due.

This annuity is not an estate like a widow's interest or a ground rent, as in Devine's Ap., 30 Pa. 348; Irwin v. Bank, 1 Pa. 349; Zeigler's Ap., 35 Pa. 173; Schalt's Ap., 40 Pa. 170; Bantleon v. Smith, 2 Bin. 146 ; Bank v. Heilner, 47 Pa. 452.

The judgment should have been de terris : Act of June 12, 1878, P. L. 206.   The allowance of interest ought to have been submitted to the jury : Smyser v. Smyser, 3 W. & S. 437; Obermyer v. Nichols, 6 Bin. 159; Buchanan v. Montgomery, 2 Yeates, 73; Gaskins v. Gaskins, 17 S. & R. 390; Heller's Ap., 116 Pa. 534.   Even in Addams v. Heffernan, 9 Watts, 529, where the facts differ from the present case, the question of interest was left to the jury.

*A. B. Longaker, A. S. Knecht* with him, for appellee.—The

reservation in the deed created a conditional estate: Bear v. Whisler, 7 Watts, 144; Helfrich v. Weaver, 61 Pa. 390; Bartholomew v. De Haven, 57 Pa. 128; Watters v. Bredin, 70 Pa. 235; Christman v. Christ, 4 Penny. 291; Eichelberger v. Gitt, 104 Pa. 73; Bouvier's Law Dictionary, 391. The words "under and subject" apply to the payments to be made to plaintiff, as well as to those to be made to her husband. A sheriff's sale upon a subsequent lien cannot defeat an estate: Irwin v. Bank, 1 Pa. 349; Zeigler's Ap., 35 Pa. 173; Schall's Ap., 40 Pa. 170; Hacker v. Cozzens, 92 Pa. 461.

A fixed lien, or a lien standing in the title, and a covenant running with the land, will not be affected or discharged by a sheriff's sale under a second mortgage while a first intervening mortgage remains undischarged: Dewalt's Ap., 20 Pa. 236; Wertz's Ap., 65 Pa. 306; Eichelberger v. Gitt, 104 Pa. 73; Strauss's Ap., 49 Pa. 353. A fixed lien was created here: Strauss's Ap., 49 Pa. 353; Heist v. Baker, 49 Pa. 9. The annuity to plaintiff is incapable of computation and therefore a fixed charge. There is no. rule of law which requires a supporting principal sum. Plaintiff was no party to the transaction of the payment of the purchase money and therefore her rights were not affected: Diefenderfer v. Eshleman, 113 Pa. 310.

The provision for plaintiff was in the nature of a testamentary provision.

Judgment can be entered de terris and execution limited to the real estate. Assumpsit was the proper remedy: Bartholomew v. De Haven, 57 Pa. 126; Diefenderfer v. Eshleman, 113 Pa. 310. The act of June 12, 1878, does not apply because the deed was executed in 1873; and that act only prevents personal liability, it does not affect judgments de terris. Under the Procedure Act of 1887, assumpsit is the only remedy.

Plaintiff was entited to recover interest: Addams v. Heffernan, 9 Watts, 543; Tospon v. Sipe, 116 Pa. 599; Bantleon v. Smith, 2 Bin. 146; Sopp v. Winpenny, 63 Pa. 81; Buck v. Fisher, 4 Whart. 516; De Haven v. Bartholomew, 57 Pa. 128; Obermyer v. Nichols, 6 Bin. 159.

The statute of limitations does not confine a recovery by plaintiff to the annuity for six years prior to suit: De Haven v. Bartholomew, 57 Pa. 128; Diefenderfer v. Eshleman, 113 Pa. 305; Briggs's Ap., 93 Pa. 485; Com. v. Snyder, 62 Pa. 157.

OPINION BY MR. JUSTICE GREEN, July 11, 1894 :

We think the learned court below was correct in the construction given to the clause of the deed creating the charge. It is not really disputed that the charge of $250 annually, in favor of Daniel Rohn, was a fixed lien, or charge, upon the land by virtue of the words, " under and subject nevertheless to the payment of the sum of two hundred and fifty dollars yearly and every year unto the said Daniel Rohn," etc. We think the case of Heist v. Baker, 49 Pa. 9, settles the character of such a charge. The words there were, " Under and subject nevertheless to the payment of the sum of $932.52 at the decease of the said Elizabeth Gross, unto the above named Ann Eliza and Rachel Gross or to their legal representatives." Mr. Chief Justice WOODWARD, delivering the opinion of this court, said of these words : " According to the cases cited in the argument, as well as according to the reason of the thing, these words created an express lien upon the land for the sum mentioned, which was not divested by the sheriff's sale, because during the life of Mrs. Gross, it was a lien of indeterminate value, and was manifestly intended to run with the land." To the same effect is Eichelberger v. Gitt, 104 Pa. 64, in which we said : " Henry Gitt conveyed the land to Abdiel F. Gitt on Dec. 21, 1853, 'subject to the payment of five thousand nine hundred and fifteen dollars, the purchase money.' These are apt words for imposing a lien, the grantee took the estate conditioned for the payment of a certain sum, and performance of the condition may be enforced by action of ejectment." We do not think that there is anything in Hiester v. Green, 48 Pa. 101, which conflicts with either of the foregoing cases. On the contrary that case recognizes that " parties may, by clear and express words, in deeds of conveyance, create liens upon land either for purchase money, or for the performance of collateral conditions, which will be binding between themselves and their privies, and such liens will be divested by subsequent sheriff's sales unless they are in the nature of testamentary provisions for wives and children, or are not capable of valuation, or are expressly created to run with the land." In the present case the charge comes within all of these excepted conditions and is therefore not divested by the sheriff's sale.

The contention of the appellant however turns chiefly upon

the provision for the widow. During the life of Daniel Rohn the sum of two hundred and fifty dollars was to be paid to him annually, and after his death the sum of one hundred dollars was to be paid annually to the widow. It is argued that because the words " under and subject " are not immediately associated with the direction to pay the widow the annual sum provided for her, it is not a lien or charge upon the land. It is true that the words " under and subject " are not repeated in the direction to pay the annuity of the widow, but we do not think this circumstance fairly operates to disassociate the annuity from the charging words. If we consider the intent of the grantor alone, it would be hardly possible to conceive that he did not mean to confer the same security for the payment to the widow that was given to secure the payment to himself. Apart from her more helpless condition and the smaller sum provided for her, the absence of any motive to make a distinction in the grade of the security for the respective payments forbids the thought that such could have been intended. But, apart from these considerations, the order and connection of all the words of the grant which create the double charge, or rather the successive charges, do not require such a construction. The clause of the deed which creates these charges for the grantor and his wife is one continuous clause, commencing with the words " under and subject," and not terminating until both are fully provided for, and it may well be held that in the mere rhetorical sense, as well as in the mental sense, both of the annual payments described in the succeeding words were intended to be equally affected by the opening words of the sentence. There is no question that the words " under and subject " apply directly to the annual sum of $250 to be paid to Daniel Rohn, for they are in immediate juxtaposition. But the provision for the wife follows directly after the provision for the husband and as a part of the same sentence, and is upon the same subject, and separated only by the difference in the contingency, to wit, the payment to the husband during his life and thereafter to the wife during her life. The whole sentence is thus, " Under and subject nevertheless to the payment of the sum of two hundred and fifty dollars yearly and every year unto the said Daniel Rohn during his natural life, on the first day of April in each year, the first payment to be made on the

first day of April, 1875, and, after the death of the said Daniel Rohn, if his wife survives, then the sum of one hundred dollars for each and every year shall be paid to her on the first day of April in each and every year, the first payment not to become due until April 1, 1875, in any event." The payment of the one hundred dollars annuity, is simply the alternative of the payment of the two hundred and fifty dollar annuity, when the latter has expired by the death of the annuitant. We think it would be doing violence to the plain meaning of the words, as well as to the obvious intent of the grantors, one of whom was this very widow herself, to hold that the husband was to have the security of the land for his annual sum, and that the other grantor was to have no security at all, and was to be bound to look only to the personal liability of any stranger who happened to own the title. We are confirmed in this opinion by the words of the rest of the clause. Immediately after the provision for the widow is a direction that both the husband and wife, grantors in the deed, shall have the right and privilege to occupy three rooms of the house during their joint lives and the life of the survivor. As this is a palpable charge upon the title, into whosesoever hands it might fall, it is entirely consistent with the idea that the grantors intended to have the security of the land for all the reservations in the deed in their favor.

For the reasons herein stated we dismiss all the assignments of error except the fifth. This assignment relates to the question of interest on the arrearages of the annual payments, from the time they severally matured. The learned court simply denied the defendant's point on this subject but gave no specific direction to the jury, though in the concluding sentence of the charge the jury was directed to render a verdict for the plaintiff for the amount of the arrearages only, at the rate of one hundred dollars per annum. The jury allowed interest as claimed by the plaintiff. The defendant's fifth point did not call the attention of the court to the subject of interest as being an open question which might be affected by the facts one way or the other, but requested a general instruction that the plaintiff was not entitled to interest. This the court simply declined, and strictly the answer was not error, because, under the authorities, interest may be allowed on such charges.

But we have held that the liability for interest depends upon the facts of the given case and perhaps the ends of justice would be best subserved by directing another trial to have that question determined.

In the case of Heller's Appeal, 116 Pa. 534, interest was asked for, in a case similar to this, but was refused by the master and court below, and we declined to interfere.   There, as here, it appeared that the widow never demanded her dower and died without having done so.   It is true her dower had never been assigned, and there was no fixed amount due upon which interest could accrue for nonpayment.   The master held there was no authority for the payment of interest in such circumstances, and this court sustained his ruling.

In the case of Gaskins v. Gaskins, 17 S. & R. 390, a testator bequeathed to his widow an annual sum of fifty dollars and charged it upon his land, which he devised to his sons.   After eleven years, an action was brought to recover the annual payments, and interest on them.   The court below decided that interest could only be recovered from the time of suit brought, there being no evidence of any previous demands.   HUSTON, J., delivering the opinion of the court, said : " The case before us presents the naked question of the plaintiff not asking for principal or interest, until the interest on the first years became equal to two thirds of the principal ; and we have on authority and on principle come to the conclusion that the decision of the court below was right. . . . When an annuity is growing from land of a yearly value sufficient to pay it, and nothing said of it by him to whom it is due, the fair presumption is he does not want it.   There is no ground to suppose the occupiers of this land agreed to pay or expected to be charged interest for it, and the decision is that if the land is resorted to, interest is not due until demanded or suit brought.   Here then we are stopped by authority and we do not feel disposed to overrule that case."

In Smyser v. Smyser, 3 W. & S. 437, proceedings in partition were instituted on the land of a decedent, which was accepted by a son, who entered into recognizance to secure the widow and heirs their shares of the valuation money.   The mother died without having collected her dues and her administrators brought suit for the amount, and claimed interest on

the annual sums from the time they were respectively due. The court below allowed the whole claim and was reversed by this court. In a per curiam opinion we said : " Prima facie annual payments to the widow of an intestate, charged on his land as an equivalent for her dower at the common law, bear interest from the day they are due. But in this instance there may perhaps be enough in the relation of the parties to convince a jury that the money was left in the defendant's hands on deposit, because not immediately needed. In the case of a stranger no such presumption would arise ; but between a parent and child it might in some cases be implied. In any case however it must depend on particular circumstances. . . . It is a presumption purely of fact, however, which can be drawn on either side only by a jury, according to the strength of the circumstances ; and as it is not a legal inference from the facts found, we are compelled to remit the cause for another trial."

There is so much analogy between the facts of these two cases and the case at bar, and so much justice in the rulings upon those facts, that we are disposed to follow them with a similar ruling in the present instance. This plaintiff never collected, and so far as is known never seriously demanded, the annual sums due her, and of course she never claimed or received any interest on those sums. Presumably she left the money with her son because she did not need it and was content that it should so remain. When appealed to by the defendant who had a right to know what her claim was she evaded his inquiry and gave no answer. She testified that she had money of her own and that she at one time loaned to Jacob $700, which he afterwards paid back to her with interest. She said she asked him for this money sometimes and that he said he could not pay it, he had no money and that she said nothing in reply. Without our deciding whether interest ought to be allowed in the state of facts as they now appear of record, we think it should be referred to a jury to determine the question under the authority of Smyser v. Smyser. It is true that in Addams v. Heffernan, 9 Watts, 529, we held that interest should be allowed upon an unpaid annual sum, but the circumstances of that case were different and did not raise the present question.

As a matter of course any judgment that may be entered

against the defendant will be a judgment de terris.  We affirm the judgment of the court below on all points but the one relating to interest, and we only reverse on that in order that the verdict of a jury may be taken on that question.

Judgment reversed and new venire awarded.